I represent Michael Winters in his employment discrimination case against Deere & Company based out of Waterloo. My client Michael Winters was a 30-year employee of Deere and was unjustly terminated because of his disability by Deere & Company. What happened was that Judge Strand granted a summary judgment in Deere's favor and my client has exercised his right to appeal. What is the basis of my client's appeal? Judge Strand gave an incongruous ruling. At the end of his argument, he basically says, Deere accommodated my client's disability for three years and why should they do it anymore? But then in the first part of the argument says that Deere didn't accommodate my client. Therefore, that incongruity makes no sense when you look at the entirety of First, it's undisputed that my client had a disability. That was a mental health disability based upon major depression and anxiety. It's also undisputed that my client notified Deere & Company of that disability. It's also undisputed that Deere did accommodate my client's disability by giving him time off in terms of regularly paid vacation and more importantly, FMLA. My client is not alleging an FMLA violation. This comes down to a violation and my client filed the basis under the Iowa Civil Rights Act, Chapter 216, Sub 1 and that is employers cannot discriminate against their employees on the basis of discrimination. So what was that discrimination? When you look at the record in this case, there is a direct line from my client to the discriminatory act. What is that? As I already pointed out, disability was mental health. There was notice to Deere & Company. Deere & Company provided that accommodation in terms of time off because what would happen is how he would exhibit, how Mr. Winters would exhibit his disability is he would grow agitated at work and sometimes raise voices or as his performance reviews, which were consistently successful reviews for years, the only blemishes on those records were sometimes my client would talk a little raw to fellow co-employees or that he needed to use his language better, but nothing severe. No threats. Were those performance evaluations that included those kinds of comments about his interactions with other folks, did that occur also before the diagnosis of the depression and anxiety? Can you give me a little background on where disability begins? Yes, Judge Kelly, I appreciate that. And to answer your question is, they were primarily, I believe the record does not show much, if any at all, where he was having agitated or outbursts or anything, difficulty working with co-workers prior to his mental health diagnosis in 2016. That's the timeline. That's when he was first diagnosed with the depression and they started accommodating him by saying that he just needs time off. Time to cool off. Time to get his head about himself. And also, Mr. Winters made Deere and his supervisors aware of the medication and some of the side effects from those as to what could cause dizziness or otherwise. And Deere, to Deere's credit, accommodated my client and they did it for years. And so how did we get to the discriminatory act? Notice in 2016, provided the accommodations, now we jump to 2019. That was the key part of this timeline. In June and July of 2019, my client started showing additional that he needed more time off. Well, that's when my client first started getting significant pushback from his immediate supervisor, Jared Morrison, on getting that time off. He was a 30-year employee, so he already had a ton of paid vacation that was already there. So he could take that paid vacation. And they were granting the time. So when my client was absent from work, he did it with full notice to Deere and Deere granted it to him. But he was missing a lot of time, which got under Deere's, I guess, it was problematic to Deere's. And because of that, in 2019, Jared Morrison, who became my client's immediate supervisor, I believe it was approximately 2013, lost his tolerance, for lack of a better term, and started pushing back on Mr. Winters. He was pushing back by being idiosyncratic in his criticisms. He was being unjustified. But what's also weird is that Mr. Morrison still gave him relatively good reviews. And so what's going on here? Why am I telling you this story? It's because Morrison was complaining about absenteeism. So what happens is in July, my client happens to mention to Morrison, you know, sometimes I can't get out of bed in the morning, or sometimes I just want to end it all. Now, it's disputed whether or not my client made the further statement. Sometimes I want to put a gun to my head. My client denies that statement. Again, that came from Mr. Morrison, an older Mr. Morrison. And Mr. Morrison at that time decides, you know what, this guy's never at work. I know we approved it. I've got to find a way to get around this thing. So then he gets, my client gets a fit-for-duty leave in July of 2019. Again, approved and insisted upon by HR at Deere. My client takes it off, does exactly what was requested, got a psyche eval, passed flying colors. Comes back to work September 24, 2019, and comes back with no restrictions, no prohibitions, and no discipline. But Morrison is his supervisor, and Morrison still doesn't like this guy being gone enough. So then what happens is... Counsel, let me just make, I want to make sure you've commented several times that the supervisor doesn't like him being absent. Are there any times when he's been denied leave up until this point, the September 24th point? The record does reflect that towards the end in 2019, my client was asking for his paid vacation time off. Was that the allegation of, I'm just going to take every Friday off or something like that? Okay. Exactly. Was he denied leave because, in the face of a request due to, hey, I need some time off because of my disability? Yes, Your Honor. I believe the record supports that conclusion. Absolutely. Because why my client was taking the paid time off is, okay, you know what, I need some time off to cool down, to get my head right, and so he wanted to take every Friday off, and of course Morrison pushed back, nope, you're not going to do that. Knowing full well why my client needed the time off, is he needed the time off because he needed to right himself and to get away with that. So in September 24th, he comes back. Morrison decides, of course I'm gleaning this from the record because nobody admits that they violate, that they fire somebody because of their disability, but we get up to October 7th. My client's been back at work for roughly two weeks. Morrison starts pushing my guy's buttons. Morrison started being idiosyncratic and really started pushing at him to get him to have that outburst, which happened on October 8th. And here was the termination. Is that an inference? I mean, we've got to look at the facts. Absolutely, Your Honor. Most favorable to your client. When you say he's doing this to actually get a reaction, what's in the record that supports that inference? What supports that inference is my client had just returned back to work from a several week absence. I can't remember if it was six or eight, but it was mid-July to mid-September. So he's gone a long time. It's also in the record that Morrison and the immediate HR director do not like my guy being gone all the time. And so Deer is facing a dilemma. Well, we've approved his absenteeism. We can't fire him for that. We know about his disability. We can't fire him for that. We've got to find some other reason to fire him. This is the pretext. And so Mr. Morrison pushes my client's buttons, knowing full well that he is prone to outbursts. They have an approximately minute to two-minute raised voice argument. That's what Mr. Morrison said. That's what my client said. And both Winters and Morrison immediately run to HR, saying this was an incident. Let's figure this thing out. HR then, with Tabitha Lewis, never talks to Mr. Winters. Only takes Mr. Morrison's side of the story. They decide, based upon what Morrison's telling me, we need to fire him. We finally have a basis to fire him that's not absenteeism or because of his disability. That's the pretext. That's what's going on. My client was never disciplined. He was never reviewed. There was no compliance. That's the pretext. And that's why it's disappointing that Judge Strand granted summary judgment. All these facts, I'm sure my esteemed colleague is going to dispute every one of them, but what does that show? A genuine issue of material fact which justifies my client arguing those points to a jury, not dismissing out as a summary judgment. Now, Your Honors, I should have mentioned this at the beginning, but I did want to reserve five minutes for rebuttal. I see I'm under five minutes. Unless there's a question, I will reserve the remainder for rebuttal. Thank you, Your Honors. Please be seated. May it please the Court, opposing counsel, Ben Roach, I represent Deere and Company. This case is a straightforward disability failure to accommodate and discrimination case under the Iowa Civil Rights Act. It falls under the familiar framework that is the same under the American with Disabilities Act that this court routinely handles. There really aren't any disputed legal issues. I think the dispute is what are the actual wishes the facts were to try to get by summary judgment. Before I get into some of those details, I do want to address a couple of things that came up in questions from the court. First, the performance reviews that had comments about Mr. Winter's demeanor. Those started in 2013, so they did predate when he first notified Deere that he had been diagnosed with depression and anxiety. Those are at pages 136 to 146 of the appendix. Second, the comment that Mr. Winter admits he made that precipitated his last paid leave was, I felt like putting a gun to my head every morning. That's in his deposition at page 118 of the appendix. Mr. Winter did have a long history at Deere. I really want to focus on the last couple of weeks, but there are a couple of things about that history that are important. First is, as opposing counsel mentioned, Mr. Winter's employment. Deere did grant him multiple leaves during his employment, both those required by the FMLA and extended leaves, which are essentially accommodations for disability. There is that history of mentions that he had difficulty getting along with coworkers. There was an attendance issue. In three months in 2019, while he was not on FMLA leave, he did miss 14 days and that generated a written notice to him that his attendance could be an issue if it continued. Those were not accommodation days. Is that your position? Correct. Those were days that would have been missed for some sort of ordinary illness or vacation days. As a salaried employee, they really weren't tracked if they weren't FMLA. It was a notice that even when he wasn't on protected leave, you're still missing a lot of time. So he was taking PTO, but too much? Is that it? He was out of paid time off on some of it. Is there a policy that limits the amount of paid time off? Obviously there was a warning issued, but if a long-time employee has a lot of vacation, they tend to be in the office less often. Sure. Remember, he had also missed three months earlier that year, too. Was that on an accommodation? Well, for FMLA. So he would have used his paid time off. That, though, he had a legal right to take. Correct. I don't mean to downplay that time, but I think the focus really is on the time later in 2019 after this. Because he doesn't allege any real adverse action from that. As we lead up to those last two weeks, he was on a paid leave after he'd made the comment about putting a gun to his head. Again, that was a paid leave. He returned to work on September 24th. And here's where we get into a series of facts that were undisputed. And when I mean undisputed, they were in our statement of facts with our summary judgment papers, and the plaintiff admitted that they were accurate. So it's not even an interpretation of the record. They admit that they're accurate. So on that date, he was released by his physician to return to work with no restrictions. He met with Tabitha Leslie, the HR director. And again, he did not ask for any type of accommodation from Ms. Leslie. She even asked him, do you need anything? He didn't ask for anything. Coming out of the meeting, he said he wanted feedback from his supervisor, Jared Morrison. He met with Morrison to get that feedback, some of which was critical of his work product. After receiving that feedback, Winters reacted negatively. He went and confronted a coworker who he blamed for giving Mr. Morrison information that was critical of his performance. He also saw that while he was out, there was an email that coworkers had gotten together after work for something. And he sent an email to everyone, all of his coworkers, complaining that he wasn't included. Then he emailed HR and asked for three days off to regroup, because his first day back had gone so poorly. They granted that. They gave him those additional three days off. Again, another accommodation that he'd asked for. The next week, he worked four days and took Friday off for vacation. Then we get to Monday, October 7th. Mr. Winters and Jared Morrison again meet to go over the feedback that Mr. Winters requested. Mr. Morrison gave it. Again, not all of it was positive. There were some issues that needed to be corrected. The next morning, Mr. Winters comes into Jared's office, and he admits he raised his voice. He admits he said, I will fight you to the end. This will not turn out good for one of us. The encounter was such that both men called HR, both Winters and Morrison. Upon speaking with HR, and again in his deposition in this case, Mr. Winters expressed no regrets for the way he behaved during that meeting. But at that point, he had been terminated, correct? Yes. So if you're looking at the time, it's October 7th, or 8th, the time of the angry two minutes, if that is part of or a symptom of or a manifestation of his disability, does he need to then request leave again as an accommodation? That sort of seems to be the pattern between Mr. Winters and Deere, that he has an issue and then he can take the leave. Why was this... No, go right ahead. So I'd say two responses. One, I think under this court's precedence, no, Deere doesn't have to inquire if there are additional accommodations that he hasn't requested. No, none additional. It seems like he didn't even have a chance to take the kind of accommodation that he normally was taking, which was leave, because he got terminated. Well, and this is where I want to be very precise on the record. I know opposing counsel made it seem like these incidents that happened on September 24th and again on October 8th were the norm and that there were regularly arguments that resulted in Mr. Winters then having to take a few days off. That's not the case. There is no other situations like that in the record. His past leaves were when he came and said, hey, I've got depression and anxiety, I need time off work. There's nothing in the record that shows they were tied to specific workplace incidents or arguments with anyone. This last two weeks, the pattern of coming to work, getting feedback, arguing with somebody and asking to go home, then coming back, getting feedback, getting into an argument, making threats, that was new. So that was not behavior that had been encountered or accommodated before. I think also important... I think your opposing counsel spoke of outbursts, so you just see the record differently in terms of what that really means as it's related to his disability? Yes. In terms of specific outbursts of going and confronting a co-worker, hey, you told my boss that there were some mistakes in my drawing, and then asking for the rest of the week off. And then in terms of coming in to Mr. Morrison's office with a raised voice and telling him he was going to fight him to the end and this isn't going to turn out good for one of us. That was new behavior. That was not something that had happened before and there's nothing in the record that would show that. And that would indicate that, well, we can get to whether or not that has to be accommodated, but it was not something that had been accommodated or addressed before. Just on the surface, it seems like these two incidents were just kind of the straws that broke the camel's back. But they were on the back of repeated accommodation and requests and taking FMLA leave and things like that. Now, you can correct me, but it just on the surface seems like he had pushed them so far, but the pushing up until September, I think, were accommodations. And you even said these were the first two kind of new sorts of incidents. And then at that point, I think it's undisputed that the Compliance Department didn't conduct an investigation. And it just, to me, it seems like looking at the record, two incidents, two new incidents over the course of a month, month and a half, no investigation, termination over the phone. Would that have happened to someone who hadn't asked for accommodations? Yes. I mean, there's certainly no evidence to indicate to the contrary. Again, when we say two new incidents, I mean, these were significant incidents. And when we say the straw that broke the camel's back, I think, to a sense, that's true. I mean, there's an accumulation of incidents, but primarily it's the ones... the ongoing difficulty getting along with coworkers, dating back to 2013, as put forth in the performance reviews. We've got the attendance unrelated to FMLA or other approved leave issues. And then we've got, when we come back, it's not just that... he has to request an accommodation. He doesn't. And then he goes out and gets in an argument with a coworker and goes off on leave. And then just a few days later, the cycle repeats itself. He's given feedback. He wants to argue. He says, this isn't going to get any better until one of us is gone. There is nothing to accommodate here, and I think we'll get to that. I mean, the case law says, listen, just because you know an employee has a mental illness and just because you have accommodated aspects of that in the past doesn't mean that the employer has to be clairvoyant and divine that there's some other accommodation that is needed. So the fact that they've given them this leave doesn't mean that they have some super duty  The other thing is, and again the case law is clear on this, you don't have to accommodate disruptive behavior. So the going out and confronting the coworker, yelling at Morris, those are not the types of behavior that have to be accommodated, and a retroactive request for accommodation, again, is not something that is required. And again, we've got the Walls case, we've got the Schapauer case, where an employee tries to justify some sort of rules violation or misconduct by blaming it on a disability and then requesting an accommodation in hindsight. And as it relates to the termination, again, Mr. Winters isn't disputing that all of these events happened. What he wants to do is second guess business judgment. And again, there's a long line of cases that says courts aren't sitting as a super personnel department to second guess the employer's business justification. And especially here where, again, Mr. Winters isn't even disputing these events. He just wants to argue that, well, termination was too severe. Like, yeah, I did these things, but I shouldn't have been fired. And the accommodation he proposes apparently is either to let him keep doing this, which I don't think is required by the law, or this requirement to have, you know, the two-level-up supervisor calm him down. And one, I don't think the record is clear. I mean, that was never an accommodation in the past. I think that was just a comment that Mr. Kalamudi made that in the past he'd been able to calm Michael down. And I don't think it was in any reference to being any sort of official accommodation. But again, on these undisputed facts, there's more than ample evidence that there was a legitimate nondiscriminatory reason for the termination. And for that reason, you know, the court should not substitute its judgment for Deere to overturn that. And we'd ask that the district court order be affirmed. And I know there's a little time left, but I think I'll just end it there. It seems like a good place to stop. Thank you. Again, may it please the Court, Your Honors. Actions speak louder than words. After this two angry minutes, as Judge Kelly pointed these out, what happened? Morrison runs off to HR, Winters runs off to HR. Does Morrison run to security because he fears for his life or fears for his safety? No. Does he go to HR and say, you've got to call security, I'm afraid of everything? No. Does Morrison fire him that day? No. Does HR fire him that day? No. My client finished his day of work on that day. It doesn't have to be a threat of immediate violence, right? It could be other misconduct that justifies termination. Certainly, Your Honor. Absolutely. But where was the violence? We don't know the context of what — It could be misconduct is my argument. Yes, Your Honor. And I absolutely do appreciate that. But also, look at what was said. Raise voices and I'm going to fight you on this. I disagree with your assessment of my work performance. I'm going to fight you on this. Morrison takes that as a smoking gun and he runs off to HR and says, ah, we got him. I'm sick of this guy being gone all the time. That goes to the pretext. That goes to a genuine issue of material fact that a jury should weigh to determine whether or not they believe Winters, they believe Morrison. That's why summary judgment was inappropriate at this particular time. There was more than enough genuine issue of material facts to deny summary judgment. That's why my client is asking that this Court reverse that particular decision. Also, with the accommodations. I'm sorry, Judge Kelly, were you about to say something? I didn't mean to interrupt. They've been accommodating my client for several years and or months. Also, the issue, and I'm glad that my esteemed colleague pointed it out too. Yes, my client admitted in his deposition that he felt like putting a gun to his head. But he also testified, felt like. I didn't do it. Big difference. And also, he mentioned it one time. There's a dispute as to whether it was in June or July of 2019. That's immaterial. But what is material is, let's say it was the most recent date, July of 2019. Deere did nothing except give him more time off, go through a psyche eval and accommodate my client's mental health. They were accommodating. They were doing these things. What happened on October 8th was a discriminatory act because they didn't want him to be gone anymore. They were sick of having an employee who used mental health to get time off. They needed somebody there. Let's fire him. Great. We finally got the basis to fire him, which was an illegal act. And then they covered it up. Well, excuse me, didn't cover it up. They embellished. They embellished on it by Morrison then, reminding him, oh, remember, he threatened to put a gun to his head four months ago. Or he needs more time off. We can't allow that to happen. But we can't fire him for absenteeism because we approved him. We can't fire him for disability because that's illegal.  Do you disagree that the record shows that he took a lot of leave independent of the leave he requested, either FMLA or otherwise? But all of his leave that he did take, Your Honor, was approved by Deere. And I don't believe he was ever sanctioned because of it. They might have noted it in his performance review saying, hey, try not to take so much time. But he was never disciplined. He was never criticized. And what also was interesting about the incident on October 8th was they fired him because of alleged his demeanor. That came out in a couple witnesses' deposition testimony. Or his behavior. Excuse me, his behavior. Well, what was his behavior? You raise your voice to Jared Morrison. Bad. Don't do that again. First time it had ever happened. Raise his voice. But Morrison also raised his voice. And so what this and what my client's basis is as to why my client has enough evidence to get to a jury on this particular issue, at least to survive summary judgment, is that there's genuine issues of material fact as to who to believe. Winters or Morrison. Deere or Winters. My guy did everything Deere asked him to. When they wanted to take time off, he took time off. When they wanted to take a psyche eval, he took a psyche eval. And also his performance reviews were consistently successful except every once in a while my guy was, and he admitted, sometimes I use the wrong language. I say the wrong things. Stop being so raw talking to your coworkers. But he addressed his mental health. That wasn't enough. There's enough here to show the pretext. There's enough here to show the failure to accommodate. And so I respectfully ask this Court, please reverse the summary judgment and remand for further proceedings. Thank you, Your Honor.